UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHELEPE LUNN,                                 Case No. 2:23-cv-10378

        *Plaintiff,*                         Laurie J. Michelson
                                              United States District Judge
*v.*

SHAWN GRAHAM,                                 Patricia T. Morris
                                              United States Magistrate Judge

        *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 22)

## I.  RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Summary Judgment Motion (ECF No. 22) be **GRANTED,** and the case dismissed in its entirety.

## II.  REPORT

### A. Introduction

Plaintiff Phelepe Lunn is a prisoner in the custody of the Michigan Department of Corrections ("MDOC").  (ECF No. 1, PageID.1).  He filed this action under 42 U.S.C. § 1983, alleging violations of his First Amendment right to freedom of speech and his Eighth Amendment right to be free from cruel and unusual

1

punishment.  (*Id.* at PageID.3–5).  The Court *sua sponte* dismissed Plaintiff's claims against Defendants Jodi Deangelo, Warden, and M. Mates, Deputy Warden.  (ECF No. 5).  Graham filed a motion for summary judgment arguing that McDaniel failed to carry his burden to prove his claims.  (ECF No. 22).  The motion is fully briefed and ready for adjudication.

## B. Procedural and Factual Background

On August 26, 2022, Plaintiff Lunn witnessed Defendant Graham sleeping at his desk, and later in the day watching videos on YouTube.  (ECF No. 1, PageID.2, ¶ 7).  The next day Lunn reminded Graham that sleeping on the job is a dereliction of duty and Graham's actions were recorded by the surveillance cameras.  (*Id.* at PageID.2, ¶¶ 8–9).  Graham directed Lunn to "mind his business" and warned him that if he got in trouble for sleeping on the job, he would make Lunn suffer.  (*Id.* at PageID.2, ¶ 8).  Despite this threat, Lunn filed a grievance on Lunn on August 26.  (*Id.* at PageID.2, ¶ 11).  After being interviewed by his supervisor, Graham began retaliating against Lunn.  (*Id.* at PageID.2, ¶ 12).

In early September, Lunn contacted Deangelo and Mates[1] regarding Graham's retaliatory behavior but neither responded nor took corrective action.  (*Id.* at

---

[1] The Court *sua sponte* dismissed Warden Jodi Deangelo and Deputy Warden M. Mates due to Plaintiff's failure to state a claim.  (ECF No. 5, PageID.26).

PageID.3, ¶¶ 19–20).   On September 21, Lunn filed a grievance against Graham. (*Id.* at PageID.3, ¶ 18).

On September 26, Graham directed Lunn, along with his cube mates, to go to the gym while their respective cells were searched.  (*Id.* at PageID.2, ¶ 13).  There, Graham informed the prisoners that the cells were being searched because of the grievance Lunn filed against him for sleeping on the job, and went on to call Lunn a "snitch."  (*Id.* at PageID.2, ¶¶ 14–15).  Graham also announced that the retaliatory acts would continue until Lunn "learned his lesson."  (*Id.* at PageID.2, ¶ 15).  A few days later, Graham performed another cell search during which some of Lunn's property went missing.  (*Id.* at PageID.3, ¶ 20).  Lunn confronted Graham about the missing property and in response Graham wrote Lunn a "false major misconduct." (*Id.* at PageID.3, ¶¶ 20–21).  Lunn contends that he was ultimately found guilty of the misconduct as the hearing officer refused to investigate his retaliation claim.  (*Id.* at PageID.3, ¶ 22).[2]

Later that month, Graham ordered his partner to conduct another cell search of Lunn's area "five minutes after [Graham] had just conducted a cell search of the same area."  (*Id.* at PageID.3, ¶ 26).  Lunn is seeking a preliminary injunction, declaratory relief, and monetary and punitive damages.  (*Id.* at PageID.5).

---

[2] As noted below, Plaintiff pled guilty to the misconduct, and no "finding" was made against him.

3

### C. Legal Standard

A court will grant a party's motion for summary judgment when the movant shows that "no genuine dispute as to any material fact" exists.  Fed. R. Civ. P. 56(a).  In reviewing the motion, the court must view all facts and inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case."  *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted).  In making its determination, a court may consider the plausibility of the movant's evidence.  *Matsushita*, 475 U.S. at 587–88.  Summary judgment is also proper when the moving party shows that the non-moving party cannot meet its burden of proof.  *Celotex*, 477 U.S. at 325.

The non-moving party cannot merely rest on the pleadings in response to a motion for summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993).  The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later.  10B Charles Alan Wright

& Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998).  "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D.N.J. 2010).  In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility.  *Id.* at 493.  And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'"  *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).  "[A] pro se party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist.  *Street*, 886 F.2d at 1479–80.  The court will rely on the "facts presented and designated by the moving party."  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992).  After examining the evidence designated by the parties, the court then determines "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 13010 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52).  Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### D. Analysis

### 1.  Plaintiff's First Amendment Retaliation Claims

For Lunn's First Amendment retaliation claim against Graham to survive summary judgment, Lunn must proffer evidence establishing a genuine issue of material fact on each of the following: (1) he engaged in protected conduct, (2) Graham took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between the adverse action and Lunn's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  The undersigned's discussion will be limited to the protected conduct element as Lunn has failed to satisfy this first element, and thus it is not necessary to discuss the adverse action and causal connection elements.

The parties agree that an "inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  However, the right to file a grievance is protected

only insofar as the grievance is not frivolous. *Id.* Graham argues that Lunn has not engaged in protected conduct which would support his First Amendment retaliation claim.

### a. August 26, 2022 Grievance

First, Graham argues that Lunn's August 26 grievance was frivolous and thus he did not engage in protected conduct when filing it. Based on Graham's interpretation, he contends the issue Lunn grieved on August 26, 2022 concerned his use of language in violation of the MDOC's Employee Handbook procedures, and not his act of sleeping and watching YouTube while on duty. (ECF No. 22, PageID.97, 99, 115). The undersigned agrees that in the "State Problem Clearly" section Lunn identifies the problem as Graham's act of walking past his cube and stating that if he filed a grievance against Graham, he would be sorry. (*Id.* at PageID.115). However, in the paragraph directly above, which requires an inmate outline the steps he undertook to resolve the issue before writing the grievance, Lunn stated "I tried to resolve this issue number of times with Officer Graham about him sleeping and watching movies and he told to mind my fucking business." (*Id.* at PageID.115). In this section, Lunn identifies the issue not only as the violative language Graham used but also Graham's practice of "sleeping and watching movies" while on duty. Reviewing the grievance as a whole demonstrates that Lunn not only took issue with Graham's language but also with him sleeping and watching

YouTube while on duty. *Teague v. Wadas*, No. 07-cv-00752-LTB-KMT, 2008 WL 4371926 at * 2 (D. Colo Sept. 22, 2008) (finding the language and assertions in a party's grievances "must be considered in their entirety, rather than piecemeal").

In anticipatory fashion, Graham argues that even if Lunn's grievance centered on his behavior, the allegation that he was sleeping or watching YouTube did not impact Lunn and thus filing this grievance would not be considered protected conduct as the grievance was frivolous. (ECF No. 22, PageID.99–100). "Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous." *Samspon v. Davis*, No. 2:19-cv-176, 2022 WL 2760061, at *3 (W.D. Mich. May 12, 2022). However in *Maben v. Thelen*, the Sixth Circuit provided additional guidance on what would be considered frivolous:

> Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*. *Ziegler v. State of Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her); *White-Bey v. Griggs*, 43 F. App'x 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use " to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, at *1–2 (6th Cir. 2002) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse);

8

> *Thaddeus-X v. Love*, 215 F.3d 1327, at *2–3 (6th Cir.
> 2000) (finding a prisoner's threat to file a grievance
> against an officer for "eating waffles at a prison guard
> desk," which was against prison policy "patently frivolous
> as the defendant's conduct had no adverse impact on [the
> prisoner]").   We have also described a non-frivolous
> grievance as a "legitimate" grievance. *Pasley v. Conerly*,
> 345 F. App'x 981, 985 (6th Cir. 2009).

*Maben v. Thelen*, 887 F.3d 252, 264–65 (6th Cir. 2018).   Based on the guidance

provided by the Sixth Circuit, Lunn's August 26 grievance qualifies as frivolous.

Although Graham's behavior may have violated MDOC policy, his actions "had no

adverse impact" on Lunn and thus the grievance was frivolous.  *Thaddeus-X*, 215

F.3d 1327 at *2–3 (finding a prisoner's threat to file a grievance against an officer

for "eating waffles at a prison guard desk," which was against prison policy "patently

frivolous as the defendant's conduct had no adverse impact on [the prisoner]").

Similar to the prisoner in *Thaddeus-X*, Lunn does not explain how this violation has

an adverse impact on him, and that is because Graham's action of sleeping and

watching television at the desk do not have an adverse impact on Lunn.

And Lunn's complaint regarding Graham's direction for him to mind his

business does not salvage his grievance as Graham's comment amounted to nothing

more than verbal abuse.  *Scott*, 230 F.3d 1359 at *1–2 (finding a grievance frivolous

when the inmate complained that he had been subject to verbal abuse).  Thus, the

undersigned finds that Lunn's August 26, 2022 complaint was indeed frivolous and

the act of filing the grievance does not qualify as protected conduct.

### b.  September 21, 2022 Grievance

Next, Graham argues that the September 21, 2022[3] retaliation grievance was also frivolous as it did not mention him calling Lunn a snitch or detail any of the alleged retaliatory acts (i.e., threats, false misconducts, and harassing cell searches), and thus Lunn did not partake in protected conduct by filing this grievance.  (ECF No. 22, PageID.100–01).

### i.  Harassing Cell Searches

In his September 21 grievance, Lunn states Graham went to his cubicle and ordered him, along with everyone else present, to proceed to the gym and expressed that the reason why they were being shaken down was "because Lunn [was] writing grievances" on him.  (*Id.* at PageID.117).  Lunn attached several affidavits to his complaint which support the contention that Graham made this statement.  (ECF. No. 1, PageID.10–12).  However, as Graham pointed out, the grievance does not include any reference to Graham calling Lunn a "snitch," nor details (e.g., dates, locations, specific acts) on the retaliatory acts allegedly undertaken by Graham (i.e., threatening Lunn and writing false misconducts) between August 26 and September 21, 2022.  (ECF No. 22, PageID.100–01).  However, the grievance does discuss the

---

[3] Lunn identifies September 26, 2022 as the date he and the other inmates in his cube were escorted to the gym before Graham performed the cell search.  (ECF No. 1, PageID.2, ¶ 13).  The correct date of the cell search, per MDOC records, is September 21, 2022 but it appears Lunn uses the date of the Step I Grievance Response Supplemental Form.  (*Id.* at PageID.8).

cell search which occurred on September 21.  Based on the substance of the September 21 grievance, the only complaints relevant in Lunn's grievance are Graham's comment that the inmates were being shaken down due to Lunn filing grievances against him, and the cell search.  (*Id.* at PageID.117); *Vesey v. Trowbridge*, No. 21-10116, 2023 WL 6394367, at *4 (E.D. Mich. Sept. 30, 2023) (Plaintiff "cannot broaden the scope of 'protected conduct' based on claims not contained in the grievance because the grievance is the only protected conduct at issue [ ].") .

Graham relies on *Vesey* and *Sampson* to argue that his actions amount to nothing more than "verbal abuse" and thus Lunn's grievance is frivolous.  But the underlying facts in both cases are distinguishable from the issue at hand, and as such cannot be relied upon to find Lunn's grievance frivolous.  In *Vesey*, the claimant's grievance involved defendant's threat to fire plaintiff if he indicated that he would not perform certain job duties in the future when directed to do so.  2023 WL 6394367 at *4.  Notably, this threat was made in the privacy of defendant's office. *Id.* at *3.  In *Sampson*, plaintiff alleged the defendant correction officer harassed him and might have said something derogatory.  2022 WL 2760061, at *3.  The court found that the grievance complained of nothing more than verbal abuse.  *Id*. Generally, when the court has made a finding that a grievance complains of verbal abuse, as seen in *Vesey* and *Sampson*, there is no ominous threat of physical harm to

the plaintiff by the defendant or by other inmates.  (*See e.g., Good v. Spencer*, No. 2:21-cv-00001, 2022 WL 9813754, at *4 (W.D. Mich. July 19,2022) (use of profanity qualifies as verbal abuse and thus a grievance complaining of such action is frivolous); *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741, at **1,3 (W.D. Mich. Nov. 30, 2020) (finding defendant's actions of degrading, harassing, and speaking over plaintiff amounted to nothing more than verbal abuse and thus a grievance complaining of such action is frivolous).  The facts in this case are significantly different.

While the grievance does not state that Graham called Lunn a "snitch," it states that Graham stated in front of other inmates that the reason for the cell search was due to Lunn filing a grievance against him.  By identifying Lunn as the reason the cube was being searched, Graham's words appear to place a target on Lunn's back.  As unacceptable as this type of action is, the allegations contained in Lunn's grievance are insufficient to be found as anything more than verbal abuse.  The grievance does not contain any allegations that other inmates harassed or assaulted Lunn after the shakedown.  Further, the grievance does not allege that Graham himself took any other type of action toward Lunn or threatened to cause him physical harm.  Absent any additional allegations, the undersigned finds the grievance to be frivolous. *Contra, e.g., Rayos v. Leavitt*, No. 1:20-cv-968, 2022 WL 876934, at *2 (W.D. Mich. Feb. 22, 2022) (defendant's statement was not simply

verbal abuse and while defendant "may not have intended to convey that he would literally tie [p]laintiff's mask around his throat, taken at face value, [defendant] threatened physical harm to [p]laintiff."); *contra, e.g., Cavin v. McBride*, No. 2:20-cv-12470, 2024 WL 790402, at \*9 (E.D. Mich. Jan. 31, 2024) ("[W]hile Defendant states that Plaintiff's grievance was based solely on 'verbal abuse,' the grievance in fact was based on an allegation of targeted harassment, intimidation, humiliation, and retaliatory threats, as well as an unprovoked shakedown . . . ."); *Parker v. Reddin*, No. 20-1106, 2020 WL 8415084, at \*3–4 (6th Cir. Aug. 5, 2020) (finding that a Michigan prisoner's grievance was protected activity because corrections officers' verbal abuse included physical threats and use of racial slurs.).

As to the September 21 shakedown, this incident alone, or in combination with Graham's comment, is insufficient to find that Lunn's grievance was not frivolous. *Ziegler*, 90 F. App'x at 810 (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her). Lunn alleges that less than two weeks after the September 21 shakedown, Graham searched his cell again. (ECF No. 1, PageID.3, ¶ 20). This claim is not included in Lunn's grievance as it occurred after the grievance was filed. However, it is worth discussing as it lends credence to Lunn's claim that Graham conducted harassing cell searches. (ECF No. 22-3, PageID.117). Graham proffers search logs from August 25 to September 30, 2022 which show

that he only searched Lunn's cell once during the relevant period, on September 8, 2022.[4]   (ECF No. 22, PageID.103; ECF No. 22-9, PageID.210).   However, the records also show that on the same day the September 21 grievance was filed, Graham conducted a pat down search of Lunn.   (ECF No. 22-9, PageID.236). Notably, Lunn did not file another grievance complaining about the September 30 30 cell search.   And notably, Lunn does not refute this contention in his response. (*See generally* ECF No. 25). Thus, there is no basis for the undersigned to find that this additional search is relevant or that it should be factored into the equation of protected conduct as Lunn did not file a grievance challenging the search.

Finally, it should be noted that Plaintiff was not singled out for the search, all the prisoners in that area were searched and Plaintiff does not allege that he was subjected to any abusive conduct by his fellow prisoners because of being called out as the reason for the search.

### ii.   Major Misconduct Report

In his September 21 grievance, Lunn alleges that he has been the subject of retaliation which included the issuance of a false major misconduct report by Graham.   In the September 8 misconduct report, Graham alleges that Lunn approached him, called him a vulgar name, and stated "you cannot search my cell

---

[4] During that time period, Lunn was subjected to pat down searches on August 27, 28, 30, and 31, 2022 but those were conducted by other corrections officers.  (ECF No. 22-8, PageID.143, 144, 147, 159, 161).

after I wrote a grievance on you." (ECF No. 22-5, PageID.121).  The September 8 misconduct report shows Lunn's signature under the Waiver of Class II or III Hearing next to the sentence indicating "I understand I have a right to a hearing.  I waive my right to a hearing and **plead guilty to all charges**.  I also waive my right to appeal and accept the sanctions imposed." (*Id.*) (emphasis added).  Notably, Lunn's verified complaint does not mention that he pled guilty.  Further, neither his complaint nor any of documents attached thereto show that Lunn challenged the truthfulness of Graham's assertions in the misconduct report.  The only indication that Lunn possibly challenged the veracity of the report is when he labeled it "false" almost two weeks after he pled guilty.  But merely labeling the misconduct false does not make it so, especially in light of the fact that there is no documentary evidence showing that Lunn challenged it before pleading guilty.  Further, while Lunn alleges in his complaint that the hearing officer refused to investigate his retaliation claim against Graham before finding him guilty of the misconduct, this allegation does not eliminate the fact that he pled guilty to the charges.  (ECF No. 1, PageID.3, ¶ 22).  As Lunn did not challenge that he pled guilty to the misconduct, he cannot rely on the misconduct report to support that his September 21 retaliation grievance is not frivolous.  (ECF No. 22, PageID.102).

Even if Lunn was coerced into pleading guilty under duress or threat of further retribution, there is no basis in this record for a reasonable factfinder to conclude the

same. Had Lunn made such an allegation, the Court's analysis might have been different. *Cf. Parker v. Horton*, No. 2:18-cv-00080, 2019 WL 4040616, at *10 (W.D. Mich. July 25, 2019) (plaintiff conceded that while he pled guilty during the misconduct hearing, he informed the hearing officer that the misconduct was retaliatory but the hearing officer "threatened to further retaliate against him and place him in segregation if he did not plead guilty."). However, as Lunn has not raised any assertions of duress or coercion, he cannot use it as a basis to support that his September 21 grievance was not frivolous.

### iii. Snitch

As Lunn does not mention Graham calling him a snitch in his grievances, it is not appropriate to assess whether this factor should be considered in the protected conduct analysis. *Vesey*, 2023 WL 6394367, at *4 (Plaintiff "cannot broaden the scope of 'protected conduct' based on claims not contained in the grievance because the grievance is the only protected conduct at issue [ ].") .

In sum, because Lunn cannot raise a genuine dispute as to whether his September 21 grievance was not frivolous, no reasonable factfinder could determine that he engaged in protected conduct.

### 2. Eighth Amendment Claim

The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend VIII. The unnecessary and wanton infliction

16

of pain constitutes cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A claim of unnecessary and wanton infliction of pain has both a subjective and objective component. *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Liability exists "only if [the defendant] knows that inmate faces substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Various courts have held that prison officials who identify an inmate as a snitch to other inmates, with intent to provoke an assault or the fear of assault, may be liable for an Eighth Amendment violation. *See, e.g., Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) ("labeling an inmate a snitch satisfies the *Farmer* standard and constitutes deliberate indifference to the safety of that inmate"); *Comstock v. McCrary*, 273 F.3d 693, 699 n. 2 (6th Cir.2001) (acknowledging that "[b]eing labeled a 'snitch' was dreaded, because it could make the inmate a target for other prisoners' attacks"); *Hobbs v. Lockhart,* 924 F.2d 774, 775 (8th Cir. 1991) (liability established for assaults on inmate because of guard's labeling inmate as an informant).

17

Graham argues Lunn cannot sustain his Eighth Amendment claim because he did not allege that Graham's statement calling him a snitch placed him in any danger. (ECF No. 22, PageID.110).  Lunn responds that he satisfied the objective component by way of the fact that having been labeled a snitch in front of at least 30 inmates is a serious health risk, especially in a hostile prison environment.  (ECF No. 25, PageID.260).  As to the subjective component, Graham knew his words would be heard by other inmates and thus he had a sufficiently culpable state of mine when he made these comments. (*Id.*).

While Lunn may have stated a plausible Eighth Amendment claim, he has failed to proffer any evidence in support of that claim.  In response to Graham's motion, he merely regurgitates case law while conclusively stating that having been "labeled a 'snitch' in front of at least 30 other inmates is a serious health risk."  (ECF No. 25, PageID.260.  But the affidavits attached to his complaint do not support the allegation that Graham called him a snitch.  (ECF No. 1, PageID.10–12).  The affidavits merely state that Graham informed the other inmates that the shakedown was due to Lunn filing grievances against him.  But there was no implication that Lunn was providing information on the other prisoners or working as an informant on Graham's behalf.

Further, Lunn presents no evidence regarding any danger, threats or physical harm he faced following Graham's statement that he was to blame for the shakedown

18

because he filed a grievance against Graham. *Gonzales v. Ryan,* No. 96-2375, 1997 WL 664728 at *1 (6th Cir. Oct. 23, 1997) (granting summary judgment where the plaintiff conceded in his deposition that he never received any physical injury, was never threatened, and never underwent any psychological treatment as a result of the comments).

Accordingly, the undersigned recommends Graham's summary judgment be granted as to Lunn's Eighth Amendment claim.

### E.   Conclusion

For these reasons, I recommend **GRANTING** Defendant Graham's motion for summary judgment (ECF No. 22).

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."   Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).   Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   The parties are advised that making some objections, but failing to raise

others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 1, 2024

S/ Patricia T. Morris
Patricia T. Morris
United States Magistrate Judge